**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|   |   |
|---|---|
| | \* |
| **TITAN INDEMNITY CO.,** | |
| | \* |
| **Plaintiff,** | |
| | \* |
| **v.** | **Case No.: PWG-15-2480** |
| | \* |
| **GAITAN ENTERPRISES, INC.,** *et al.*, | |
| | \* |
| **Defendants.** | |
| | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In November 2016, I issued a Memorandum Opinion in the instant declaratory-judgment action holding Plaintiff Titan Indemnity Company ("Titan") not liable for a fatal accident involving a truck driven by Defendant Santos Sifredo Romero Garcia under a policy the insurance company issued to Defendant Gaitan Enterprises, Inc. ("Gaitan"). Mem. Op. 9–10, ECF No. 72.[1]  I also conditionally held that Titan had no duties or obligations under an endorsement called an MCS-90 that federal law requires to be attached to trucking insurance policies. *Id.* at 11–12; *see also* 49 U.S.C. § 31139. I reached this conclusion because the MCS-90 endorsement only covers liability incurred by an insured named in the underlying insurance policy, *Forkwar v. Progressive Ins. Co.*, 910 F. Supp. 2d 815, 825–26 (D. Md. 2012), and the Titan policy named neither Garcia nor his trucking companies, Form MCS-90, J.A. 14, ECF No. 62.[2]  Although the policy did name Gaitan, I understood the company's only potential source of liability to stem from Defendants' argument, which I rejected, that Garcia's truck was a

---

[1] For a summary of the relevant facts, see Mem. Op. 2–5.
[2] Citations to "J.A." refer to the Joint Appendix filed by the parties in the case.

"temporary substitute" for a Gatain truck that was out of commission on the day of the accident. Mem. Op. 8–10.  But because Titan did not argue that Garcia's non-insured status resolved the issue, I provided the Defendants an opportunity to show cause why my conditional ruling was erroneous.  *Id.* at 12.

In response to my show-cause order, Defendants explain that, despite my rejection of their "temporary substitute" theory, Gaitan may still be found vicariously liable for the accident in the pending case before the Circuit Court for Prince George's County.  Defs.' Resp. 4–5, ECF No. 74.  It was not apparent to me from the state-court complaint or from the summary-judgment briefing that the state-court plaintiffs assert a theory of vicarious liability separate and apart from their "temporary substitute" argument.  *See* Cir. Ct. Prince George's Cty. Second Am. Compl., J.A. 1–12.  But Titan does not appear to dispute that Gaitan's vicarious liability remains at issue in the state-court action.  *See* Pl.'s Reply to Defs.' Resp. 5–6 & n.1, ECF No. 75.[3]  Defendants cite *Integral Insurance Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 258, 262 (2d. Cir. 1991), for the proposition that a MCS-90 endorsement may require an insurer to cover an insured's vicarious liability, Defs.' Resp. 5, and neither Titan's Reply nor my independent research has identified authority to the contrary.  Accordingly, I will now consider the arguments raised by the parties in their original summary-judgment briefing concerning the MCS-90 endorsement.  In doing so, I find that Titan would be required to pay for any final judgment holding Gaitan vicariously liable for Garcia's negligence, because the accident occurred during

---

[3] Whether or not an agency relationship existed between Gaitan and Garcia was not and is not an issue before me in this declaratory-judgment action.  *See* Compl., ECF No. 1. My prior characterization of Garcia as an "independent contractor," Mem. Op. 11, was meant to distinguish Garcia and his companies from Gaitan Enterprises, not to render a binding judgment on any agency relationship that may or may not exist among the various parties.

interstate transportation of property.[4]

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Discussion

The MCS-90 "creates a suretyship by the insurer to protect the public when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured." *Canal Ins. Co. v. Distrib. Servs., Inc.*, 320 F.3d 488, 490 (4th Cir. 2003). Specifically, the endorsement requires the insurer to pay for any "final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor

---

[4] The Defendants urge me to refrain from ruling on the MCS-90 issue until the state-court action has concluded. Defs.' Resp. 10. Defendants did not argue that I should refrain from deciding the issues before me in the original summary-judgment briefing, and I see no reason to do so now.

vehicles subject to the financial responsibility requirements of . . . the Motor Carrier Act of 1980." Form MCS-90, J.A. 14; *see also* 49 C.F.R. § 387.15, illus. 1. Thus, for the Titan Policy's MCS-90 endorsement to cover liability arising out of the accident, Garcia's vehicle must have been subject to the Motor Carrier Act's financial-responsibility requirements. The Motor Carrier Act's minimum-financial-responsibility requirements apply to "transportation of property by motor carrier . . . in the United States between a place in a State and . . . (A) a place in another state; (B) another place in the same State through a place outside of that State; or (C) a place outside the United States." Motor Carrier Act, § 30, 49 U.S.C. § 31139(b). In other words, the MCS-90 only covers accidents that occur during the interstate transportation of property.

Titan argues that it cannot be required to pay for any judgment against Gaitan pursuant to the MCS-90 because, but for the accident, Garcia would have hauled asphalt from the Fort Meyer plant in Washington, D.C. to its final destination without leaving the District.[5] Pl.'s Mem. 28, ECF No. 60-2. The Defendants argue that the relevant inquiry for MCS-90 coverage is whether the insured engages in interstate shipping generally and, in any event, that the shipment at issue constituted interstate shipping because the trip began at Garcia's parking spot in Landover, Maryland. Defs.' Opp'n 18–20, ECF No. 63.

Courts have divided over whether the interstate or intrastate nature of a shipment should be judged based exclusively upon the leg of the shipment during which the accident occurs; the entirety of the shipment; or, most broadly, the type of commerce in which the shipper engages. This issue is one of first impression in the Fourth Circuit. *Brunson ex rel. Brunson v. Canal Ins. Co.*, 602 F. Supp. 2d 711, 715 (D.S.C. 2007). The Fifth Circuit has interpreted the statute most narrowly, holding that "the [MCS-90] endorsement covers vehicles only when they are presently

---

[5] The statutory definition of "state" includes the District of Columbia. 49 U.S.C. § 31139(a)(3).

engaged in the transportation of property in interstate commerce." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 249 (5th Cir. 2010). In *Coleman*, the accident at issue occurred while a truck driver was parking his truck "bobtail" (i.e. a tractor with no trailer attached) at his home. *Id.* at 246. In the lower court proceedings, the parties stipulated that, as the driver was not hauling any cargo at the time of the accident, he "was not engaged in transportation of property at the time of the accident," making it easy for the appellate court to find the MCS-90 inapplicable under its test. *Id.* at 249, 254.

The Eighth Circuit has adopted a somewhat broader test, though one that in my view is not necessarily inconsistent with the Fifth Circuit's interpretation. The Eighth Circuit has held that whether or not property has traveled in interstate commerce for MCS-90 purposes must be determined "at the time of accident," but the court assesses whether a shipment is interstate or intrastate by examining "the 'essential character' of the shipment" from the vantage point of the "shipper's intent." *Century Indemnity Co. v. Carlson*, 133 F.3d 591, 595, 599 (8th Cir. 1998) (quoting *Roberts v. Levine*, 921 F.2d 804, 812 (8th Cir. 1990)). In *Carlson*, the court addressed the applicability of an MCS-90 endorsement to an accident that occurred while a truck hauled corn from a Minnesota farm to a river terminal. *Id.* at 593–94. Although the route from the farm to the terminal was entirely within Minnesota-state lines, the court characterized the shipment as interstate because the farmer intended his grain to be shipped from the river terminal to ports along the length of the Mississippi River. *Id.* at 598–99. The only Fourth Circuit court that has considered this question has adopted the Eighth Circuit's test. *Brunson*, 602 F. Supp. 2d at 717.

Taking an even broader approach, in *Royal Indemnity Co. v. Jacobsen*, a district court applied a MCS-90 endorsement to a shipment of alfalfa hay, a product exempt from Motor Carrier Act regulation. 863 F. Supp. 1537, 1541 (D. Utah 1994). Noting that "the purpose of the

[MCS-90] endorsement [is] to provide financial protection to members of the public and shippers," *id.* at 1541–42 (quoting *Empire Fire & Marine Insurance Co. v. Guarantee National Insurance Co.*, 868 F.2d 357, 366 n.13 (10th Cir. 1989)), the court refused to exclude the shipment at issue from MCS-90 coverage based on the "totally fortuitous" happenstance that the carrier was "hauling hay on the day of the accident instead of some other" non-exempt product," *id.* at 1542.   To vindicate the Motor Carrier Act's purpose, the court held that the MCS-90 provides coverage whenever a carrier that owns a policy to which the endorsement is attached is liable for an accident for which the underlying policy provides no coverage.   *Id.*   Similarly, in *Reliance National Insurance Co. v. Royal Indemnity Co.*, a district court found that a MCS-90 applied to an accident that occurred while a truck pulled a float in a parade that occurred entirely within New York City.   No. 99 Civ. 10920 NRB, 2001 WL 984737, at *1, *6 (S.D.N.Y. Aug. 24, 2001).   Even though the truck was not engaged in interstate commerce at the time of the accident, the court held that the MCS-90 applied because the insured leased the truck driver's services for the purpose of interstate trucking.   *Id.* at *6.

The Defendants urge this Court to adopt the broadest interpretation of MCS-90 coverage. Defs.' Opp'n 19–20 (citing *Jacobsen*, 863 F. Supp. at 1541–42).   I decline to do so because I find the approach inconsistent with the statute's text.   The MCS-90 is the mechanism established by the Department of Transportation to impose the "minimum levels of financial responsibility" required by § 30 of the Motor Carrier Act.   49 U.S.C. § 31139(b); 49 C.F.R. § 387.7(d).   And those requirements exist to "satisfy liability . . . for the [interstate] transportation of property by motor carrier."   49 U.S.C. § 31139(b).   The *Jacobsen* and *Reliance National* courts envisioned the MCS-90 as satisfying liability for intrastate "transportation of property" that does not meet the limited scope articulated in § 30 of the statute.   Accordingly, I am not persuaded that the

approach taken by the *Jacobsen* and *Reliance* courts is appropriate. As between the Fifth Circuit and Eighth Circuit interpretations, as I mentioned previously, I do not see them as inconsistent with one another. In *Coleman*, the Fifth Circuit had no occasion to consider whether the MCS-90 covers accidents that occur during intrastate legs of larger interstate shipments, as the Eighth Circuit did in *Carlson*, 133 F.3d at 598–99, because the parties stipulated that the accident did not occur while the driver was transporting property, *Coleman*, 625 F.3d at 249.[6] I therefore hold that a court must "examine the 'essential character' of the shipment from the shipper's intent" at the time of accident in order to determine whether a shipment constitutes interstate transportation of property for MCS-90 purposes. *Carlson*, 133 F.3d at 598 (quoting *Levine*, 921 F.2d at 812).

Titan argues that the shipment at issue in this case does not constitute interstate transportation under this trip-specific test for three reasons: (1) "the accident took place on private property"; (2) "[t]he truck was not carrying any cargo at the time of the accident"; and (3) had Garcia hauled the cargo, he would not have left the District of Columbia between picking up and dropping off the cargo at its final destination. Pl.'s Reply 6, ECF No. 66.[7] Based on these arguments, it appears that Titan assumes that the word "transportation," as used in § 30, means "[t]he movement of goods or persons from one place to another by carrier," *Transportation*, Black's Law Dictionary (10th ed. 2014). But the statute defines the term exceptionally broadly to include "services related to" the movement of property. 49 U.S.C. § 13102(23)(B). Such

---

[6] In *Progressive Gulf Insurance Co. v. Estate of Jones*, the U.S. District Court for the Southern District of Mississippi explicitly interpreted the Fifth Circuit's "trip-specific" approach as encompassing the Eighth Circuit's "essential character" test. 958 F. Supp. 2d 706, 714–15 (S.D. Miss. 2013).

[7] Titan also argues that the material was not a hazardous substance, *id.*, which Defendants do not dispute, meaning that Motor Carrier's minimum-financial-responsibility requirements for transportation of hazardous substances, which are not limited to interstate transportation, do not apply, *see* 49 U.S.C. 31139(d).

related services include "*arranging for*, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking and interchange of . . . property," *id.* (emphasis added), performed using not just the "motor vehicle" itself, but also any "vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of . . . property." *Id.* § 13102(23)(A).

The record shows that, at the time of the accident, Garcia was waiting in line at the Fort Meyer yard to fill his truck bed with a load of asphalt, *see* Garcia Dep. 29:11–30:1, J.A. 119–20. In other words, Garcia was in the process of "receiving" the cargo he was to haul at Fort Meyer's "yard," terms explicitly included with within the statutory definition of "transportation."  And while Titan maintains that the shipment was to take place entirely within the District of Columbia, Fort Meyer "arrang[ed] for" the movement of its asphalt by calling Marvin Gaitan, the owner of Gaitan Enterprises, and asking him to send trucks from his parking lot in Landover, Maryland.  2013 Gaitan Dep. 6:14–21, 8:19–21, J.A.144, 146; 2016 Gaitan Dep. Vol. I 22:4–5, J.A. 185.  When Fort Meyer called Gaitan to arrange for its asphalt to be hauled, it clearly intended a truck driver to cross state lines from Maryland to the District of Columbia in order to complete the hauling job.  Thus, the shipment constituted interstate transportation of property, as defined by the Motor Carrier Act.

I therefore find that the MCS-90 attached to Gaitan's policy requires Titan to pay any final judgment against Gaitan should the company be found vicariously liable in the pending state-court action.  That said, "federal courts have consistently stated that the MCS-90 endorsement does not create a duty to defend claims which are not covered by the policy but only by the endorsement."  *Harco Nat'l Ins. Co. v. Bobac Trucking*, 107 F.3d 733, 735–36 (9th Cir. 1997); *see also Carolina Ca. Ins. Co. v. Yeates*, 584 F.3d 868, 883 (10th Cir. 2009); *T.H.E.*

*Ins. Co. v. Larsen Intermodal Servs., Inc.* 242 F.3d 667, 677 (5th Cir. 2001).  Accordingly, Titan has no obligation to defend Gaitan in the state court action.

## <u>Conclusion</u>

For the reasons stated above, I will DENY Plaintiff's Motion for Summary Judgment as to its duties and obligations under the MCS-90 endorsement, and enter a Declaratory Judgment that (1) the MCS-90 endorsement attached to Gaitan's policy requires Titan to pay any final judgment against Gaitan, should it be found vicariously liable in the state court litigation for Garcia's negligence; and (2) that Titan is not obligated to defend Gaitan in the state court action.

A Declaratory Judgment will be issued separately.


Dated: <u>February 17, 2017</u>                      _____/S/_____
                                                     Paul W. Grimm
                                                     United States District Judge


jlb

9